SCOTT C. PINGEL

    Plaintiff,

vs.

AZCO, INC.

    Defendant.

Case No. 09-C-459

Case Code:

The amount in controversy exceeds $75,000.

Trial by jury demanded.

## COMPLAINT

Plaintiff Scott C. Pingel complains of defendant Azco, Inc., a/k/a Azco Construction, a/k/a Azco Integrated Construction ("Defendant") as follows:

## Nature of action

1. This is an action to redress the legal and equitable wrongs suffered by Plaintiff Scott C. Pingel when Defendant discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act of 1990 [42 U.S.C. §§ 12101 et. seq.].

## Parties

2. The plaintiff is Scott Pingel ["Mr. Pingel"].

3. The defendant is Azco, Inc., a/k/a Azco Construction, a/k/a Azco Integrated Construction ("Defendant"), a Wisconsin corporation which employs in excess of 500 employees.

1

## **Mr. Pingel's Accident and Physical Conditions**

4. On September 29, 1996, Mr. Pingel was involved in a serious car accident.

5. Mr. Pingel is blind in his left eye as a result of the accident.

6. Mr. Pingel has permanent partial hearing loss in his left ear as a result of the accident.

7. Mr. Pingel is substantially limited in his ability to see.

8. Mr. Pingel is substantially limited in his ability to hear.

9. Mr. Pingel has a physiological condition that affects his musculoskeletal body system, and has a "physical impairment" as defined by 29 C.F.R. §1630.2 (h).

10. The average person in the general population can see.

11. The average person in the general population can perform manual tasks that require depth perception.

12. The average person in the general population can perform manual tasks that require depth perception in significantly less time than Mr. Pingel can perform those tasks.

13. Mr. Pingel has a physical impairment that substantially limits one or more of his major life activities.

14. Mr. Pingel is significantly restricted in his ability to perform a broad range of jobs in various classes—specifically, he is significantly restricted in his ability to perform a broad range of jobs in various classes that require (as an essential function) vision in both eyes and depth perception— as compared to the average person having comparable training, skills and abilities.

15. Performing manual tasks is a "major life activity" under the ADA.

16. Seeing is a "major life activity" under the ADA.

17. Hearing is a "major life activity" under the ADA.

18. Working is a "major life activity" under the ADA.

**<u>Mr. Pingel's Employment with Defendant</u>**

19. Mr. Pingel began working for Defendant on September 17, 2007, as a General Laborer.

20. Prior to starting work for Defendant, Mr. Pingel was not asked by Defendant, during the interview process or otherwise, whether he had any disability or medical issues.

21. Prior to starting work for Defendant, Mr. Pingel spoke to his brother-in-law (who worked for Defendant) about the job duties for the job that Mr. Pingel was applying for.

22. Prior to starting work for Defendant, Defendant gave Mr. Pingel that asked him to identify "any physical or mental restrictions which ***would*** prevent *you from **performing the essential functions** of the job* for which you have been hired?" (emphasis added). Mr. Pingel wrote "No," as based on his understanding of the job functions as described by his brother-in-law, he did not believe he would have any limitations in performing the essential functions of the job.

23. Prior to starting work for Defendant, Mr. Pingel was not told by Defendant, during the interview process or otherwise, what his job duties would be.

3

24. Mr. Pingel did not inform Defendant of his medical issues or disability prior to starting work.
25. When Mr. Pingel reported to work on September 17, 2007, he was assigned to work under Greg Springstroh, who was Shop Superintendent.
26. Mr. Pingel performed nearly a full day's work for Defendant on September 17, 2007.
27. During that day, Mr. Pingel was asked to spend time on the following work duties:
   a. measuring objects and tacking (these duties took up most of his day, and over 9 hours of his 10-hour work day);
   b. grinding steel (this task required depth perception, and took Mr. Pingel about 4 minutes, whereas other workers only took a few seconds); and
   c. welding (this task would have taken only a few minutes out of his 10 hour shift).
28. Nearly all the job's duties were within Mr. Pingel's physical capabilities, and he performed them without incident.
29. Mr. Pingel could, with or without reasonable accommodations, perform the essential functions of the employment position he had held with Defendant.
30. Late in the day on September 17, 2007, Mr. Pingel was asked to operate a welding gun.
31. Mr. Pingel did not feel comfortable operating a welding gun because it required depth perception (which Mr. Pingel had significant limitations

4

with due to his left eye's blindness), and hot metal.

32. The next morning of September 18, 2007, Mr. Pingel went in early to work to speak to Superintendent Springstroh.

33. Mr. Pingel told Superintendent Springstroh he was blind in his left eye.

34. Mr. Pingel told Superintendent Springstroh he had permanent partial hearing loss in his left ear.

35. Mr. Pingel told Superintendent Springstroh he was not comfortable with welding or grinding steel.

36. Superintendent Springstroh told Mr. Pingel "you've got to be able to do everything."

37. Superintendent Springstroh told Mr. Pingel to go home for the day.

38. Superintendent Springstroh told Mr. Pingel he would talk to Human Resources (HR).

39. Later on September 18, 2007, Superintendent Springstroh called Mr. Pingel and told him he was fired.

40. Superintendent Springstroh told Mr. Pingel again that "we don't have anything for you."

41. Defendant regarded Mr. Pingel to have a physical impairment.

42. Defendant regarded Mr. Pingel to have a physical impairment that substantially limited his ability to see.

43. Defendant regarded Mr. Pingel to have a physical impairment that substantially limited his ability to perform manual tasks.

44. Defendant regarded Mr. Pingel to have a physical impairment that substantially limited his ability to hear.

45. Defendant regarded Mr. Pingel to have a physical impairment that substantially limited one or more of his major life activities.
46. Defendant did not offer Mr. Pingel a different job, a reasonable accommodation, or any accommodated work duties.
47. Defendant did not engage in an interactive process with Mr. Pingel.
48. Defendant did not offer Mr. Pingel any other option before terminating his employment.

**Damages**

49. After being terminated by Defendant, Mr. Pingel diligently sought work for other employers.
50. Mr. Pingel was unemployed for approximately five months, without any income or unemployment benefits earned during that time.
51. Since approximately mid February of 2008, Mr. Pingel has worked various seasonal and part time jobs that paid less than Defendant. He has been unable to secure fulltime employment with benefits.
52. As a proximate result of Defendant's acts and/or omissions as pled in this Complaint, Mr. Pingel lost wages, lost employment benefits, and suffered pain and other damages.

**Fulfillment of conditions precedent**

53. Mr. Pingel has fulfilled all conditions precedent to the filing of his ADA claims.
54. On October 23, 2007, Mr. Pingel filed a disability-discrimination complaint with the Wisconsin Equal Rights Division (ERD), which cross-

filed that complaint with the Equal Employment Opportunity Commission (EEOC).

55. The EEOC issued Mr. Pingel a Notice of Right to Sue on his discrimination complaint.

## **Jurisdiction and venue**

56. This Court has jurisdiction under §706(f)(3) of Title VII of the Civil Rights Act of 1964, as amended, [42 U.S.C. §2000e-5(f)(3)] as incorporated by §107(a) of the Americans with Disabilities Act of 1990 [42 U.S.C. 12117(a)].

57. Mr. Pingel worked for the Defendant in the Eastern District of Wisconsin. Venue is proper by §706(f)(3) of Title VII [42 U.S.C. §2000e-5(f)(3)] and by §1391(b) of the Judicial Code [28 U.S.C. §1391(b)]. Venue is also proper by §706(f)(3) of Title VII of the Civil Rights Act of 1964, as amended, [42 U.S.C. §2000e-5(f)(3)] as incorporated by §107(a) of the Americans with Disabilities Act of 1990 [42 U.S.C. 12117(a)] and by §1391(b) of the Judicial Code [28 U.S.C. §1391(b)].

## **Count I – ADA Violation**

58. Mr. Pingel realleges paragraphs 1 through 57 of this Complaint.

59. Mr. Pingel was, at all times relevant to this Complaint, an "employee" of Defendant's within the definition of §101(4) of the Americans with Disabilities Act of 1990 [42 U.S.C. §12111(4)]

60. Mr. Pingel was, at all times relevant to this Complaint, a "qualified individual with a disability" within the definition of §101(8) of the Americans with Disabilities Act of 1990 [42 U.S.C. §12111(8)], and an individual with a disability under 42 U.S.C. § 12102, including an individual with a (A) "physical or mental impairment that substantially limits one or more of the major life activities of such individual;" (B) "a record of such an impairment;" and/or (C) "being regarded as having such an impairment."

61. Defendant was, at all times relevant to this Complaint, an "employer" within the definition of §101(5) of the Americans with Disabilities Act of 1990 [42 U.S.C.§12111].

62. By its actions and/or omissions as alleged in this Complaint, Defendant discriminated against Mr. Pingel on the basis of his disability in violation of the Americans with Disabilities Act.

63. Defendant discriminated against Mr. Pingel in violation of the Americans with Disabilities Act with malice or reckless indifference to the federally protected rights of Mr. Pingel.

64. To deter future malice or reckless indifference to the federally protected rights of employees by Defendant and other employers and to punish Defendant for its malice or reckless indifference to the federally protected rights of Mr. Pingel, exemplary damages should be awarded.

**Wherefore**, plaintiff Scott Pingel prays that this Court:

   a. Order Defendant to post notices concerning its duty to refrain from discriminating against its employees on the basis of any disability;

b. Enjoin Defendant from discriminating against its employees on the basis of any disability;

c. Order the Defendant to reinstate Mr. Pingel to his position (or a comparable position) or, in the alternative, to pay Mr. Pingel for such a position for a reasonable time into the future;

d. Award Mr. Pingel the back pay, employment benefits, and other compensation he lost as a result of Defendant's discriminating against him on the basis of his disability;

e. Award prejudgment interest at the prevailing rate on the award of back pay, lost employment benefits, and other compensation lost to Mr. Pingel as a result of Defendant's discriminating against him on the basis of his disability;

f. Enter judgment in Mr. Pingel's favor and against Defendant for compensatory damages for the harm he suffered as a result of Defendant's discriminating against him on the basis of his disability;

g. Enter judgment in Mr. Pingel's favor and against Defendant for exemplary damages;

h. Award Mr. Pingel his reasonable attorney's fees, expert witness fees, expenses, and costs of this action and of prior administrative actions; and

i. Award Mr. Pingel such other relief as this Court deems just and appropriate.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated this 5th day of May 2009.

                                        Peterson, Berk & Cross, S.C.
                                        Attorneys for Plaintiff

                                        Michael F. Brown
                                        State Bar No.: 1041753

P.O. Address

Michael F. Brown
Peterson, Berk & Cross, S.C.
200 E. College Ave.
Appleton, WI 54912

(920)831-0300
(920)831-0165 (Facsimile)

mbrown@pbclaw.com